UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 MAY 22 PM 2:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

MELINDA THOMAS JOHNSON, )
  )
    Plaintiff, )
  )
vs. ) Civil Action No. CV97-S-1695-NE
  )
AEGIS AUTO FINANCE, INC., )
GUS MONTOYA, )
  )
    Defendants. )

ENTERED
MAY 22 1998

MEMORANDUM OPINION

Plaintiff Melinda Thomas Johnson commenced this action in the Circuit Court for Jackson County, Alabama on June 9, 1997. Defendants removed the action to this court on July 9, 1997, asserting federal question and diversity jurisdiction.

Plaintiff alleges defendant Gus Montoya made seven phone calls to her home on July 11, 1996, regarding a debt owed by Johnson's mother to defendant Aegis Auto Finance, Inc. Montoya's calls allegedly were made with the intent to annoy, abuse, or harass plaintiff. She thus seeks to recover damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and Alabama's common law tort of outrage.

The action is before this court on defendants' motion for summary judgment. Defendants claim they cannot be liable under the FDCPA, because they are not "debt collectors." They further argue that their conduct cannot be considered outrageous as a matter of

law.  Upon consideration of the pleadings, briefs, and evidentiary submissions, this court determines defendants' motion is due to be granted.[1]

## I. FACTS

Defendant Aegis Auto Finance, Inc. purchases retail installment contracts from automobile dealerships. Thereafter, the automobile purchasers make periodic payments to Aegis. (Travelstead affidavit ¶ 3.)  If purchasers become delinquent on payments, Aegis commences collection efforts which include telephone calls requesting payment. (Id.)

Plaintiff's mother, Linda P. Kirk,[2] purchased a Pontiac Grand Am automobile by obtaining financing from defendant Aegis Auto Finance, Inc.   (Plaintiff's deposition at 88-89.)   Ms. Kirk occasionally would fail to maintain telephone service to her residence, and would list her daughter's telephone number as a contact source on documents such as her loan application with Aegis.  (Id. at 92-93.)

Defendant Gus Montoya allegedly telephoned plaintiff's residence in Bridgeport, Alabama on July 11, 1996, attempting to speak with Linda P. Kirk. During the first call, he allegedly told plaintiff: "[T]his is Gus Montoya and I'm with Aegis Financing and

---

[1] Also pending before this court are defendants' motion to strike the affidavit of Buddy Crabtree and attached report, and defendants' motion to compel third party production of documents. This court has fully reviewed the Crabtree affidavit and report, and they form no part of the basis for this court's decision. Accordingly, defendants' motion to strike is moot. This court's resolution of the action also renders moot the motion to compel third party production of documents (doc. no. 15).

[2] Plaintiff's mother is also referred to as Linda Smith (plaintiff's deposition at 7), or Linda Pruitt. (Plaintiff's deposition exhibit 1.)

I'm trying to get ahold of Linda P. Kirk." (*Id.* at 64.) Ms. Kirk was not present, however. Plaintiff thus offered to take a message for her mother, but Montoya declined. (*Id.*) Montoya "was real polite in the first call." (*Id.* at 67.)

Montoya called a second time, "just a couple of minutes" later. Plaintiff explained that she required some time to contact her mother.

> I had told him that there had been a death in my family, I had kidney stones [which required a catheter] and I couldn't get her. She lived about a block away. I would send my daughter for her. Give me fifteen minutes and call her back.

(*Id.* at 64-65.) Montoya responded: "I don't give a damn what your problem is. I need to get ahold of her ...." (*Id.* at 83-84.)

Approximately two minutes later, Montoya called for a third time. Plaintiff explained that her daughter was attempting to retrieve Ms. Kirk, and she offered to have Ms. Kirk call Montoya upon arrival. (*Id.* at 69-70.) Montoya responded that Ms. Kirk possessed his telephone number, and requested that she call. (*Id.* at 70.) His attitude, rudeness, and tone of voice caused plaintiff to hang up the telephone. (*Id.* at 69.) After that call, plaintiff telephoned the Bridgeport police department to file a complaint about the allegedly harassing telephone calls.

Montoya telephoned for a fourth time, "a couple of minutes" later. When he identified himself, plaintiff promptly hung up the telephone. (*Id.* at 73-74, 80-81.) Montoya allegedly called a

3

fifth time, but plaintiff hung up the telephone before he could identify himself. (*Id.* at 75, 80-81.)

Montoya's sixth telephone call came "a couple of minutes" later, while plaintiff was speaking with a police officer who had arrived at her house. (*Id.* at 71.) That call was answered by plaintiff's friend, Beth Kirk.[3] Montoya allegedly told Beth Kirk that plaintiff's telephone "would burn in hell until he got ahold of [plaintiff's mother]." (*Id.* at 71-72.) Plaintiff's daughter, Laura, allegedly listened to that conversation from a second telephone in the house, but plaintiff did not speak with Montoya on that occasion. (*Id.* at 72.)

Plaintiff's mother answered Montoya's seventh telephone call, and allegedly spoke with Montoya's supervisor. (*Id.* at 75-76.) Plaintiff did not speak with Montoya or participate in that conversation, because she was discussing Montoya's alleged harassment with the police officer. (*Id.* at 76.)

Montoya never threatened violence or legal action against plaintiff or her mother. (*Id.* at 79-80.) At one point, he accused plaintiff of refusing to deliver his messages to her mother. (*Id.* at 80.)

Gus Montoya was an employee of Aegis Auto Finance, Inc. at the time the phone calls were made to plaintiff's home. (Travelstead affidavit ¶ 5.) His duties included making telephone calls to

---

[3] Beth Kirk is not related to plaintiff or plaintiff's mother. (Plaintiff's deposition at 36.)

4

collect debts on behalf of Aegis, and he did not place telephone calls to collect debts on behalf of parties other than Aegis. (*Id.*) Any calls made to plaintiff's residence were placed in an effort to collect debts owed to Aegis. (*Id.* ¶ 4.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "<u>shall be rendered forthwith if</u> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), *Fed.R.Civ.P.* (emphasis added). The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden <u>with</u> or <u>without</u> supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate

5

specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

### III. DISCUSSION

#### A. Fair Debt Collection Practices

Plaintiff's FDCPA claim is premised upon her contention that Montoya made the telephone calls "with the intent to annoy, abuse or harass the Plaintiff concerning the collection of the Plaintiff's Mother's debt." (Complaint at 2.) That contention implicates section 816 of the FDCPA, which provides:

> A <u>debt collector</u> may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d (emphasis supplied).

Defendants argue they cannot be liable under the FDCPA, because they are not "debt collectors." The relevant provisions of that statute provide the following definition:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or

7

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

. . .

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) <u>concerns a debt which was not in default at the time it was obtained by such person</u>; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(emphasis supplied).

Defendants claim they do not meet the definition of "debt collectors", because

> Aegis purchases retail installment contracts from automobile dealerships. Once an automobile dealership assigns a retail installment contract to Aegis, the automobile purchaser makes periodic payments to Aegis. If the automobile purchaser becomes delinquent in her payments, Aegis attempts to collect the debt. Aegis employees may attempt to call the delinquent debtor to collect the debt owed Aegis. However, Aegis employees do not collect debts on behalf of other creditors. (Affidavit of Richard Travelstead). If Gus Montoya made the calls as alleged by Plaintiff, he was attempting to

8

collect a debt owed to Aegis. (Affidavit of Richard Travelstead).

(Defendants' brief at 9.)

This court finds there is no evidence that defendants were "debt collectors."

> The legislative history of section 1692a(6) indicates that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.

*Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1997)(communications company which was assigned debts owed to long distance telephone companies "at the moment each telephone call [was] placed" could not be a debt collector); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996)(automobile finance company which was assigned retail installment contracts was not a debt collector); *Gowing v. Royal Bank of Canada*, No. 95-55995, 1996 WL 616665 at *1 (9th Cir. Oct. 23, 1996)(assignee of original creditor not a debt collector).

In this action, the evidence establishes that Aegis Auto Finance, Inc. purchased Linda P. Kirk's retail installment contract. There is no evidence that Linda P. Kirk's debt was in default at the time it was assigned to Aegis. Thus, it is incumbent upon plaintiff to point to facts in the record demonstrating that Aegis Auto Finance, Inc. is a "debt collector."

9

Plaintiff fails to meet that burden. Instead, she meekly argues that "[t]he purpose of the Fair Debt Collection Practices Act is to effectuate a rule that every individual, whether or not he owed a debt, has the right to be treated in a reasonable or civil manner." (Plaintiff's brief at 6.) She presents no argument or evidence to establish that defendants were "debt collectors." In fact, the term "debt collector" is nowhere mentioned in her brief.

This court thus finds there is no evidence that Aegis Auto Finance, Inc. was a "debt collector" subject to liability under the FDCPA. Similarly, the evidence before this court excludes Gus Montoya from the statutory definition of "debt collector," because he was an "employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A).[4]

Plaintiff has failed to demonstrate a genuine issue of material fact with regard to defendants' status as "debt collectors." Accordingly, defendants are entitled to summary judgment as to plaintiff's claims under the Fair Debt Collection Practices Act.

---

[4] "Creditor" is defined by the FDCPA to include "any person ... to whom a debt is owed ...." *Id.* § 1692a(4). Aegis was owed a debt, and Montoya was acting in the name of Aegis when he telephoned plaintiff's house. (Travelstead affidavit ¶ 5; plaintiff's deposition at 64.)

**B. Outrage Claim**

To recover for a claim of outrage under Alabama law, plaintiff "must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So.2d 458, 460 (Ala. 1997). Defendants contend plaintiff cannot prove the second or third elements of that claim.

To fulfill the second requirement, plaintiff must demonstrate "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Thomas v. BSE Industrial Contractors*, 624 So.2d 1041, 1043-44 (Ala. 1993). The tort of outrage "does not authorize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McAfee v. Shredders, Inc.*, 650 So.2d 871, 873 (Ala. 1994). Indeed, the Alabama Supreme Court has recognized only three categories of cases which involve "extreme and outrageous conduct":

> 1) cases having to do with wrongful conduct in the context of family burials, ...; 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim, ...; and 3) a case involving egregious sexual harassment.

*Thomas*, 624 So.2d at 1044. Plaintiff's claim does not fall within any of those categories.

11

Plaintiff attempts to analogize her case to those "involving egregious sexual harassment," and argues that "whether Mr. Montoya's action in repeatedly calling the Plaintiff's home over a fifteen (15) minute period constituted outrageous conduct should be decided by the jury as a question of fact." (Plaintiff's brief at 8.) However, the Alabama Supreme Court has recognized "in a large majority of outrage cases reviewed that no jury question was presented." *Thomas*, 624 So.2d at 1044.

This court believes there is no jury question in the present action. The Alabama Supreme Court has found that "oppressive collection practices" do not constitute outrageous conduct. *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 45 (Ala. 1990). In *Green Tree Acceptance*, the court found no outrageous conduct, despite a secured creditor's threatening, abusive, and insulting language, wrongful threats of repossession and sale of collateral, and, filing of an adverse credit report. *Id.; see also Butler v. Aetna Finance Co.*, 587 So.2d 308, 312 (Ala. 1991)("without cataloging every interaction between" creditor and debtor, the court found no claim for outrage).

Viewed in a light most favorable to plaintiff, the evidence demonstrates that seven telephone calls were made to her residence in a span of approximately fifteen minutes. Gus Montoya spoke rudely during those calls and used profanity on two occasions. That conduct cannot properly be characterized as extreme or

outrageous conduct. Accordingly, defendants are entitled to summary judgment on plaintiff's outrage claim, and this court need not address defendants' arguments on the severity of plaintiff's emotional distress.

## IV. CONCLUSION

For the foregoing reasons, this court concludes defendants' motion for summary judgment is due to be granted. An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 22nd day of May, 1998.

_____
United States District Judge